UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT WILLIAMS                                             CIVIL ACTION

VERSUS                                                      NO. 05-6291

N. BURL CAIN, WARDEN                                        SECTION "J"

ORDER AND OPINION

Robert Williams's *pro se* motion for post-conviction relief pursuant to 28 U.S.C. §2254 was considered on memoranda. Upon review of the entire state court record, it is clear that the record is sufficient for the purpose of adjudicating petitioner's claims, that a federal evidentiary hearing is not necessary, and that the petition should be dismissed for the following reasons.

Williams is a state prisoner who was convicted, following a jury trial of one count of distribution of cocaine (La. Rev. Stat. 40:967(A)) and one count of possession with intent to distribute cocaine (La. Rev. Stat. 40: 967(A)). The state district judge sentenced petitioner to a thirty (30) year term of imprisonment at hard labor.

Thereafter the state filed a bill of information charging petitioner as a multiple offender. The state judge adjudicated Williams to be a third offender pursuant to La. Rev. Stat. 15:529.1, vacated the previously imposed sentence, and sentenced petitioner to a term of life imprisonment without benefit of probation, parole, or suspension of sentence. Petitioner appealed the convictions and

sentence.  The state court of appeal affirmed the convictions,  vacated the sentence, and remanded

the case for resentencing because the state judge failed "to assign an original sentence to each count

and then failed to designate to which count the multiple bill sentence applied . . .." *State v. Williams*,

No. 2000-KA-1233 (La. App. 4th Cir. April 11, 2001).   The Louisiana Supreme Court denied

petitioner's application for writs.  *State v. Williams*, No. 2001-KO-1417 (La. March 28, 2002).

On remand, the state district judge sentenced petitioner to a thirty (30) year term of

imprisonment on his conviction for possession with intent to distribute cocaine.   Additionally, the

state judge imposed an enhanced multiple offender sentence of life imprisonment  without benefit

of probation, parole, or suspension  for Williams's distribution of cocaine conviction.  Both the state

court of appeal and the Louisiana Supreme Court denied petitioner's application for writs.  *State v.*

*Williams*, 932 So.2d 693 (La. App. 4th Cir. 2006); *State v. Williams*, 943 So.2d 1059 (La. 2006).

Petitioner also filed a petition for post-conviction relief in the state district court;  the state

district judge denied *habeas* relief.  *State v. Williams*, No. 411-522 (Criminal District Court, Parish

of Orleans January 12, 2004).  The state court of appeal denied Williams's application for writs as

did the Louisiana Supreme Court. *State v. Williams*, No. 2004-K-0221 (La. App. 4th Cir. March 15,

2004); *State ex rel Williams v. State*, No. 2004-KH-1218 (La. April 1, 2005).

Petitioner seeks to vacate his convictions and sentences on a gallimaufry of grounds:

- the admission of hearsay evidence violated petitioner's right of confrontation;
- the trial court erred in allowing Carol Williams to be brought into court wearing a prison jump suit and placed next to petitioner;
- a thirty (30) year term of imprisonment for possession of cocaine with intent to distribute is constitutionally excessive;
- the state failed to prove that petitioner was advised of his

> *Boykin*[1] rights prior to pleading   guilty plea to one of the
> predicate offenses underlying    the habitual offender
> conviction;
> - the multiple offender conviction violates  *Apprendi v. New
>   Jersey*[2]; and
> - counsel rendered ineffective assistance.

Petitioner raised each of these claims in the state court proceedings described above.  Accordingly,

he has exhausted all of his available state remedies.  *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198,

71 L.Ed.2d 379 (1982);  *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

STANDARD OF REVIEW

28 U.S.C. § 2254(d) mandates that claims adjudicated on the merits in state court

proceedings are subject to the following standards of review:

> (d) An application for a writ of habeas corpus on behalf of a
>   person in custody pursuant to the judgment of a State court
>   shall not be granted with respect to any claim that was
>   adjudicated on the merits in State court proceedings unless the
>   adjudication of the claim--
>
>   (1) resulted in a decision that was contrary to, or involved
>   an unreasonable application of, clearly established Federal law,
>   as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable
>   determination of  the facts in light of the evidence presented in
>   the State court proceeding.

In *Drinkard v. Johnson*[3] the Fifth Circuit Court of Appeals analyzed the standards of review

---

[1] *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

[2] *Apprendi v. New Jersey*,  530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

[3] 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S.1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), *overruled in part on other grounds, Lindh v. Murphy*, 521U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

set out in §2254(d) and held that when reviewing questions of fact which were previously adjudicated on the merits by a state court, a federal court may grant habeas relief only "if the state court adjudication of the claim 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.'" *Id.* (citing 28 U.S.C. § 2254(d)(2)).  As for questions of law, "a federal court may grant *habeas* relief only if it determines that a state court's decision rested on a legal determination that was contrary to . . . clearly established Federal law, as determined by the Supreme Court."  *Id.* at 768. Where a mixed question of law and fact is being reviewed, "a federal court may grant *habeas* relief only if it determines that the state court decision rested on 'an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States,' to the facts of the case."  *Id.* at 768 *(quoting* 28 U.S.C. § 2254(d)(1)).  "[A] decision is contrary to clearly established Federal law 'if the state court arrives at a conclusion opposite to that reached [by the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts.'" *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000) (*quoting Williams v. Taylor,* 529  U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)).  A writ may be granted based upon a state court's unreasonable application of federal law only "if the state court identifies the correct governing principle . . . but unreasonably applies the principle to the facts of the prisoner's case. "  *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. at 409, 120 S.Ct. at 1521.

## FACTUAL BACKGROUND

The state court of appeal summarized the facts as follows:

At about 7:00 p.m. on November 16, 1999, Detective Adam Henry was working undercover in a buy/bust operation.  Prior to going out on the street, Sergeant Patrick Brown gave him pre-photographed currency.  The photocopy of the currency was stamped by a machine with the date and time.  Detective Henry proceeded to a location with high drug complaints in an unmarked car that had audio and video recording capabilities.  In addition, the car emitted a signal that could be monitored for the undercover officer's safety.

Detective Henry observed the defendant standing on Thalia Street near its intersection with Simon Bolivar Avenue.  He waved to the defendant, and the defendant waved back.  He asked the defendant, "Anybody have anything?"  To which the defendant replied, "Yeah. Pull back and park."  The officer then negotiated for a "dime" bag which the defendant said he could handle.  The defendant then went around the car to the sidewalk and spoke with his sister, Carol Williams.  She handed him something.  The defendant then went back to the driver's side and opened his hand to reveal three pieces of compressed powder.  He let Detective Henry choose one, and Detective Henry gave him one of the pre-recorded ten-dollar bills in exchange.  Detective Henry then drove away.

Detective Henry radioed the takedown officers that he had successfully completed a transaction and furnished a description of the subjects.  The takedown team also got a description from an undercover officer on the street who maintained visual contact with Detective Henry during the transaction.  From these descriptions, Sergeant Brown, Detective Clarence Gillard, and others proceeded to arrest the subjects.

Sergeant Brown was the first to arrive on the scene.  He ordered the defendant to place his hands on the police car.  At that point, he observed the defendant put currency into his mouth.  He ordered the defendant to spit the money onto the hood of the car.  The defendant did so.  When the defendant spit out the money, Sergeant Brown noticed that a rock of compressed powder was also on the hood of the car.  The defendant and his sister were both arrested for possession of cocaine.

In the meantime, one of the officers took photographs of the subjects to Detective Henry at an undisclosed remote location.  He positively identified the subjects as the ones who engaged in the transaction with him.  The officers returned to the scene and arrested the subjects for distribution of cocaine.  A ten-dollar bill seized from the

defendant matched the serial number of one of the pre-photographed
bills provided to Detective Henry for the buy.

Detective Gillard testified that he observed the defendant place the
compressed powder substance on the hood of the police car at the
same time that he spit the currency from his mouth. He surmised that
the defendant intended to drop the rock on the ground, but that it
stuck to his hand and did not fall as expected.

The defense stipulated that the rock obtained by Detective Henry and
the rock discarded on the hood of the car both tested positive for
cocaine.

The videotape of the transaction played for the jury while Detective
Henry was on the stand. Occasionally, the prosecutor asked
Detective Henry to identify individuals or narrate portions for the
jury.

*State v. Williams*, No. 2000-KA-1233 (La. App. 4th Cir. April 11, 2001).

## DENIAL OF RIGHT TO CONFRONTATION

The defense agreed to a stipulation stating "if Ms. Karen Lewis Holmes were called to

testify, she'd be qualified as an expert in the field of the analysis of controlled dangerous substances

and that she would testify that the two white compressed objects contained within the bag marked

State's Exhibit Number 2 tested positive for cocaine." State Record Vol. I, Trial Transcript, p.20.

After the judge read the stipulation to the jury, the report prepared by Ms. Holmes was filed into the

record. The report was not shown to or reviewed by the jury.

Williams contends that the state district judge denied petitioner his Sixth Amendment right

to confront Ms. Holmes by allowing her report to be filed into the record. Additionally, construing

Williams's *pro se* petition liberally, as I am required to do,[4] petitioner asserts a claim that the

admission of the stipulation violated his right to confront Ms. Holmes. These contentions lack

---

[4] *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

merit.

The report was admitted for record purposes only; it was not reviewed by the jury. Because the report was never seen by the jury, it was not evidence considered by the jury in concluding that the state had proven petitioner guilty beyond a reasonable doubt. Therefore, the admission of the report did not violate petitioner's right of confrontation.

Nor did the stipulation itself violate petitioner's right of confrontation. "[C]ounsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence, so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." *United States v. Stephens*, 609 F.2d 230, 232 (5th Cir 1980). Petitioner was present when the judge read the stipulation to the jury. There is no evidence in the trial transcript that petitioner disagreed with the stipulation or objected to his counsel's decision to enter into the stipulation. Moreover, petitioner has not offered any evidence that Ms. Holmes was not available to testify at his trial, nor has he identified any basis for challenging Ms. Holmes's conclusion that the substances tested were positive for cocaine. Absent evidence that Ms. Holmes was unavailable to testify at petitioner's trial or that there was a valid basis for challenging the test results, counsel's decision to stipulate to the results constitutes a legitimate trial strategy.

## CAROL WILLIAMS

During the testimony of Sergeant Brown, petitioner's sister Carol Williams was brought into courtroom, and Sergeant Brown identified her as the woman who was with petitioner at the time of the transaction. Ms. Williams appeared in the courtroom in a prison jumpsuit, and stood next to the petitioner who was sitting at the defense table during Sergeant Brown's identification.

Petitioner asserts that by allowing Ms. Williams to appear in  court in "prison garb" and allowing her  to stand next to him, the state denied him a fair trial because the jury would assume that she had already been convicted for her role in the offense for which her brother was on trial.[5]

Even if the state judge erred in allowing  Carol  Williams to appear at petitioner's trial in prison attire, petitioner is nonetheless not entitled to the relief sought;  any such error  constitutes harmless error.  *See Smith v. Estelle*, 498 F.2d 631 (5th Cir. 1974) (trying defendant in prison garb rather than civilian attire subject to harmless error analysis).  In *Brecht v. Abrahamson,* 507  U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 253 (1993), the Supreme Court  held that in *habeas* proceedings, the test for harmless error is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. at 623  (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946).  The state  presented  overwhelming  evidence  of  petitioner's  guilt.   Detective  Henry identified petitioner as the individual with whom  he had made a "deal"  for a "dime" bag and identified the ten-dollar bill recovered from petitioner as one of the bills provided to him to be used in the  undercover operation.   The jury viewed  a videotape of the entire transaction between Detective Henry and petitioner.  Additionally, Detective Gillard testified that he saw petitioner place a compressed powder substance on the hood of the police car.  The parties stipulated that the substance involved in the "deal" as well as that placed on the hood of the police car by petitioner tested positive for cocaine.  Considering the weight of the evidence against petitioner, there is no possibility that Carol Williams's attire had a "substantial and injurious effect or influence in

---

[5] The district attorney had filed a bill of information against Carol Williams for her role in the transaction.  Carol Williams's trial had been severed from petitioner's trial.  At the time of petitioner's trial Carol Williams had not yet been to trial.  The day after petitioner's trial Carol Williams pleaded guilty pursuant to a plea agreement.

determining the jury's verdict."

That same reasoning applies in rejecting petitioner's claim that his convictions must be vacated because Carol Williams, attired in prison garb, was allowed to stand next to him while she was identified by Sergeant Brown.

### EXCESSIVE SENTENCE

Petitioner urges that the thirty (30) year term of imprisonment imposed for possessing cocaine with intent to distribute violates the Eighth Amendment's prohibition against excessive sentences. Louisiana law provides that except under circumstances not applicable here, whoever is convicted of possession of cocaine with intent to distribute shall be subject to a term of imprisonment of not less than two years and not more than thirty (30) years. La. Rev. Stat. 40:967(A). It is undisputed that the sentence challenged by petitioner is statutorily authorized. Nevertheless, petitioner contends that his sentence is constitutionally excessive.

While "[t]he Eighth Amendment contains no proportionality guarantee,[6] it does prohibit sentences that are grossly disproportionate to the crime. *United States* v. *Gonzalez*, 121 F.3d 928, 942 (5th Cir. 1997), *citing Solem v. Helm*, 463 U.S. 277, 288, 103 S.Ct. 3001, 3008-09, 77 L.Ed.2d 637 (1992). The first step in determining whether a sentence is disproportionate is to compare the gravity of the offense to the harshness of the penalty. *McGruder v. Puckett*, 954 F.3d 313, 316 (5th Cir. 1992). Further analysis of the sentence is necessary only when a comparison of the gravity of the crime to the sentence leads to an inference that the sentence is grossly disproportionate. Once a threshold showing of gross disproportionality is made, the sentence must be compared to sentences

---

[6] *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S.Ct. 2680, 2686, 115 L.Ed.2d 836 (1991).

for similar crimes in the same jurisdiction and to the sentences for the same crime in other

jurisdictions to determine whether the sentence violates the Eighth Amendment.  *Smallwood v.*

*Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996).

*Rummel v. Estelle*, 445 U.S. 263, 285, 100 S.Ct. 1133, 1135, 63 L.Ed.2d 382 (1980),

established the benchmark for determining whether a sentence is grossly disproportionate.  *United*

*States v. Gonzalez*, 121 F.3d at 943.  In *Rummel*, the Supreme Court concluded that a life sentence

imposed on a non-violent criminal pursuant to a recidivist statute was not unconstitutionally

disproportionate.  *Rummel v. Estelle*, 445 U.S. at 285, 100 S.Ct. at 1135.  The offenses involved in

*Rummel*, i.e., obtaining $120.00 by false pretenses, passing a no-account check, and passing a forged

check, are all non-violent offenses and far less serious than petitioner's offense, i.e.,  possession of

cocaine with intent to distribute.   Considering the severity of the sentence upheld in *Rummel*,

petitioner's sentence of thirty (30) years imprisonment for possession of cocaine with intent to

distribute is not constitutionally excessive.

<u>HABITUAL OFFENDER ADJUDICATION</u>

Petitioner urges  that the state district  judge erred in adjudicating him  to be a third felony

offender contending that the state failed to prove that with respect to the predicate conviction for

first degree robbery and simple kidnapping in 1992 he was advised of his *Boykin*  rights prior to

pleading guilty.  Under *Lackawanna County District Attorney v. Cross*, 532 U.S. 394, 121 S.Ct.

1567, 149 L.Ed.2d 608 (2001),  those convictions are deemed to be "conclusively valid."

> [O]nce a state conviction is no longer open to direct or collateral
> attack in its own right because the defendant failed to pursue those
> remedies while they were available (or because the defendant did so
> unsuccessfully), the conviction may be regarded as conclusively
> valid.  See *Daniels* [*v. United States*, 523 U.S. 374, 382, 121 S.Ct.
> 1578, 1583, 149 L.Ed.2d 590 (2001)].  If that conviction is later used

>to enhance a criminal sentence, the defendant generally may not
>challenge the enhanced sentence through a petition under §2254 on
>the ground that the prior conviction was unconstitutionally obtained.

*Id.* at 403-04, 121 S.Ct. at 1574.

The record does not indicate whether petitioner failed to appeal the challenged convictions or whether they were affirmed on appeal.  Because petitioner does not allege that the convictions were reversed on appeal, I must assume either that if there was an appeal of the convictions that it was unsuccessful or that petitioner did not directly appeal the convictions.  In either case, the convictions would no longer be subject to direct appeal.[7]

Additionally, collateral relief is no longer available for those convictions because neither state nor federal *habeas* relief is available to a state prisoner who is not "in custody."  La. Code Crim. Pro. article 351, 28 U.S.C. §2254.  The record indicates that in 1992 the state district judge sentenced petitioner to a three year term of imprisonment for first degree robbery and to a three year term of imprisonment for  simple kidnapping.  The judge ordered the sentences to be served concurrently and ordered that petitioner receive credit for "time served."  While the record does not indicate  when petitioner completed serving his sentence for those convictions, it is quite clear that he completed serving the sentence before he committed the 1999 drug offenses he now challenges.  Because Williams is no longer "in custody" for the first degree robbery and simple kidnapping convictions, those convictions are no longer open to collateral attack in their own right.  The convictions are conclusively valid under *Lackawanna.*

The Supreme Court did recognize an exception to the general rule announced in *Lackawanna*

---

[7] The time period for filing a timely appeal of the challenged convictions expired long ago.  La. Code Crim. Pro. 914.

when the petitioner challenges "an enhanced sentence on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9. L.Ed. 2d 799 (1963)." *Id*. However, because the record demonstrates that petitioner was represented by counsel when he pleaded guilty to first degree robbery and simple kidnapping, he has no basis upon which to challenge the simple robbery conviction.

INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner urges that his trial counsel provided ineffective assistance by  entering into the stipulation that the material analyzed by Karen Holmes tested positive for cocaine and by failing to file a response to the bill of information charging petitioner as a multiple offender.  Issues of ineffective assistance of counsel raise mixed questions of fact and law.  *Virgil v. Dretke*, 446 F.3d 598, 604 (5th Cir. 2006).  Petitioner is entitled to *habeas* relief on a claim of ineffective assistance of counsel only when the state court unreasonably applied clearly established federal law, as determined by the Supreme Court, to the facts of the case.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a  two prong test for evaluating claims of ineffective assistance of counsel:  a defendant seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  With regard to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688, 104 S.Ct. at 2064.  There is a strong presumption that an attorney's performance "falls within the wide range of reasonable professional assistance."  *Id.* at 689, 104 S.Ct. at 2065.  The defendant must overcome the presumption that the challenged action might be

12

considered to be sound trial strategy.  *Id.*  (internal quotation and citation omitted).

In order to satisfy the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.  It is clear that even "professionally unreasonable" errors on the part of counsel do not warrant setting aside a conviction if the error had no effect on the proceeding.  *Larsen v. Maggio*, 736 F.2d 215 (5th Cir. 1984).

The burden of demonstrating prejudice rests on the defendant.  *Strickland v. Washington*, 466 U.S. at 693, 104 S.Ct. at 2067.  The defendant must demonstrate that an alleged error actually had an adverse effect on the defense;  "that the `might have beens' [at trial] would have been important enough to affect the proceedings' reliability."  *Larsen v. Maggio*, 736 F.2d at 218.  If the defendant makes an insufficient showing on either component of the ineffective assistance of counsel inquiry, it is not necessary to examine the remaining prong of the test.  *Strickland v. Washington*, 466 U.S. at 697, 104 S.Ct. 2069.

Petitioner urges that he was prejudiced by his counsel's decision to stipulate that the material analyzed by Ms. Holmes tested positive for cocaine.  He contends that absent the  stipulation he would have had an opportunity to confront Ms. Holmes and that had he done so, there is a probability that the outcome of the trial would have been different.  In urging that there was a probability that the outcome of the trial would have been different,  petitioner does not offer any evidence that Ms. Holmes was unavailable to testify at his trial or identify any basis for challenging Ms. Holmes findings that the material she analyzed tested positive for cocaine.  Absent evidence that

13

Ms. Holmes was unavailable for trial or that the material tested by Ms. Holmes did not contain cocaine or that there was some other rational basis for challenging the findings, e.g. Ms. Holmes was not qualified to conduct the analysis, Ms. Holmes did not utilize proper testing procedures, or that the state could not establish the necessary chain of custody for the material, there is no reasonable probability that the outcome of the trial would have been different had petitioner had the opportunity to cross-examine Ms. Holmes. Petitioner has failed to satisfy the prejudice prong of *Strickland* with respect to this claim.

Petitioner also asserts that his counsel rendered ineffective assistance by failing to file a response to the multiple offender bill of information. Specifically, Williams urges that his counsel failed to object to the state's failure to submit documents containing his photograph or fingerprints to establish his prior convictions as well as counsel's failure to object to the state's failure to introduce documents evidencing the plea colloquy when petitioner pleaded guilty to the predicate offenses or establishing that he was advised of his rights prior to the guilty plea. There is no factual basis for petitioner's claim.

During the hearing on the multiple offender bill of information, counsel did urge that with respect to the 1992 predicate convictions the state had failed to prove that prior to pleading guilty the petitioner was advised of his *Boykin* rights. In fact, counsel called petitioner as a witness at the multiple offender hearing and Williams testified that he had not been advised of his *Boykin* rights. The state judge rejected Williams's testimony finding it "to be self-serving, inconsistent and false," and concluded that he had been advised of his *Boykin* rights. State Record, Vol. I, Transcript of Multiple Bill Hearing and Sentencing, p. 19.

As for the remaining predicate offense, i.e., possession of cocaine, the state introduced a true

14

copy of  minute entry dated January 21, 1998 memorializing that the court advised petitioner of his right to trial by jury or judge, his right to counsel, his right to appeal, his right to confront and cross-examine the witnesses against him, and his privilege against self-incrimination.

Additionally, for each predicate conviction, the state introduced either an arrest register or a bill of information which included a set of fingerprints.  At the multiple offender hearing  Officer Terry Bunch, who was accepted by the court as an expert in identification and comparison of fingerprints, identified the fingerprints on the arrest registers and bills of information as belonging to the petitioner. Petitioner has failed to establish that his counsel's performance at the multiple bill hearing was deficient.

<u>UNCONSTITUTIONALITY OF THE MULTIPLE OFFENDER STATUTE</u>

Relying upon *Apprendi v. New Jersey*,  530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), petitioner urges that the Louisiana multiple offender statute is unconstitutional because it allows a defendant's sentence to be enhanced beyond the statutory maximum for the convicted offense without a jury concluding that the state has proven the predicate conviction beyond a reasonable doubt.  Williams construes *Apprendi* incorrectly.

In *Apprendi* the Supreme Court held that: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id*. at 490, 120 S.Ct. at 2362-63.  Thus, contrary to petitioner's contentions, *Apprendi* does not require that prior convictions used to enhance a sentence beyond the prescribed statutory maximum be proven to a jury beyond a reasonable doubt. Petitioner is not entitled to the relief sought.  Accordingly,

IT IS ORDERED, ADJUDGED, and DECREED that Robert Williams's petition for *habeas*

*corpus* relief is hereby dismissed with prejudice.

New Orleans, Louisiana this <u>11th</u> day of September, 2007

                     UNITED STATES DISTRICT JUDGE